Filed 10/11/13  P. v. Hauser CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STANFORD HAUSER,<br><br>    Defendant and Appellant. | H039072<br>(Santa Clara County<br> Super. Ct. No. C1114324) |

Defendant Stanford Hauser appeals from a judgment of conviction entered after he pleaded no contest to second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c) – count one),[1] criminal threats (§ 422 – count two), and possession of an assault weapon (§ 12280, subd. (a)(1) – count three).  In connection with counts one and two, he admitted that he personally used an assault weapon (§§ 12022.5, subd. (b), 1203.06) and that he was a minor (Welf. & Inst. Code, § 707, subd. (d)(1)).  Defendant also admitted that he personally used a firearm in the commission of count one (§ 12022.53, subd. (b)).  The trial court sentenced defendant to 12 years in state prison.  On appeal, defendant contends:  (1) the trial court was required to stay the punishments for counts two and three pursuant to section 654, and (2) the restitution fines should be reduced to $2,400.

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

We conclude that the sentence on count two must be stayed and the restitution and parole revocation fines must be reduced to $4,800. As modified, the judgment is affirmed.

## I.  Statement of Facts[2]

On August 25, 2011, police officers responded to a report of an armed robbery of medical marijuana from the victim's backyard. They were informed that the suspects had fled in a dark vehicle and one of them had a gun. After seeing a vehicle that matched the description given by the victim, they conducted a vehicle stop. There was a large pile of marijuana branches on the backseat of the vehicle and a strong odor of marijuana. After the officer detained the three suspects, they saw a one-year-old child sitting in a car seat in the backseat of the vehicle. In removing the car seat, the officer moved some of the marijuana branches and discovered an AK-47 assault rifle.

Codefendant Breanna Pucine was identified as the driver of the vehicle. Codefendant Jules Duc had been sitting in the front passenger seat while defendant had been sitting next to the child in the backseat. Both defendant and Duc had marijuana leaves on their clothing.

Meanwhile, one of the officers was speaking with the victim. The victim provided the officer with documentation of his prescription to grow medical marijuana. The victim suspected that someone had entered his backyard during the previous week. Thus, he became suspicious that someone had again entered the backyard when he received a "missed call" from his sister, who also lived in the residence. The victim, armed with a canister of mace, went into his backyard, where the sensor light was on, and saw two individuals. Duc immediately jumped the fence. After the victim cornered defendant and discharged the mace, defendant pointed a gun at him and threatened to shoot him if he did not back off. Defendant then jumped the fence and fled in a dark vehicle.

---

[2]     The statement of facts is based on the summary of the offenses and defendant's statement in the probation report.

The police interviewed Pucine, who stated that Duc had asked her to take him and defendant to a house to pick up something. She told Duc that he needed to make it quick because she was bringing her child. Pucine followed their directions to the victim's residence and parked her vehicle. When defendant and Duc exited the vehicle, one of them was carrying a black bag. However, Pucine did not know who was carrying it. About 10 minutes later, she heard yelling and thought, "'They just jacked someone's weed.'" Defendant and Duc, who were carrying marijuana branches, then ran from the house. One of them was carrying a rifle, but she did not remember which one.

According to defendant's statement to the probation officer, he was attempting to exit the victim's yard when the victim held up what defendant thought was a gun. He then realized that it was mace after the victim attempted to spray him and missed. At that point, defendant pulled out an unloaded AK-47 to scare the victim. After defendant held up the gun, the victim backed up and defendant jumped the fence.

## II. Discussion

Defendant contends that the trial court was required to stay the sentences in counts two and three under section 654.[3]

At the sentencing hearing, defense counsel moved to stay the punishment for count two pursuant to section 654, stating: "I believe that the fear, which is the basis for the robbery in Count 1, is the same fear which is the basis for the victim's fear alleged in Count 2, and so it's therefore 654." The prosecutor argued: "You don't need to criminally threaten somebody, 'go away or I will shoot you' to rob them. [¶] The force

---

[3] Defendant contends, and the Attorney General concedes, that his claims are cognizable on appeal without a certificate of probable cause. Since defendant did not enter into a plea agreement, he is not challenging the validity of the plea and thus defendant was not required to obtain a certificate of probable cause. (*People v. Johnson* (2009) 47 Cal.4th 668, 678.)

and fear required for the robbery is simply brandishing of the weapon, the additional step of threatening to shoot him at least twice takes this outside of [P]enal [C]ode 654."

The trial court sentenced defendant to two years for count one (second degree robbery) with a 10-year enhancement for use of the AK-47 under section 12022.53, subdivision (b). The trial court also sentenced defendant to a 16-month term for count two (criminal threats) with a five-year enhancement under section 12022.5, subdivision (b) (personal use of a weapon) as well as a four-year term for count three (possession of an assault weapon). The terms for counts two and three were to be served concurrently to the term for count one.

Section 654 provides, in relevant part, that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, this statute precludes multiple punishment "where the convictions arise out of an indivisible transaction and have a single intent and objective. [Citation.]" (*People v. Monarrez* (1998) 66 Cal.App.4th 710, 713.) "Where a defendant entertains multiple criminal objectives independent of and not merely incidental to each other, he may be punished for more than one crime even though the violations share common acts or are parts of an otherwise indivisible course of conduct. [Citation.]" (*People v. Blake* (1998) 68 Cal.App.4th 509, 512.) The trial court's determination that a defendant maintained multiple criminal objectives is a question of fact that must be upheld if supported by substantial evidence. (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

Robbery is the taking of another's personal property from his or her person or immediate presence, and against his or her will, and accomplished by means of force or fear. (§ 211.) A criminal threat requires proof that, among other elements, the defendant intended the subject statement to be taken as a threat and the statement caused the victim

4

reasonably to be in sustained fear for his or her own safety or the safety of his or her immediate family. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

The Attorney General argues that defendant committed a robbery based on the following acts: defendant and Duc entered the victim's backyard without permission and took marijuana branches, and when the victim entered the backyard, defendant and Duc took the marijuana branches from his immediate presence and against his will. The Attorney General then argues that defendant's subsequent acts, which were separate and divisible from the acts giving rise to the robbery, constituted the offense of making criminal threats. The Attorney General points out that after Duc's escape over the fence, and after the victim cornered defendant and discharged the mace at him, defendant pointed the AK-47 at the victim and threatened to shoot him if he did not back off. We disagree with this reasoning. Here, the sole purpose for making the criminal threats was to facilitate commission of the robbery. Thus, there was insufficient evidence to support the trial court's finding that the acts that gave rise to count two were separate and divisible from the acts that gave rise to count one.

Defendant next contends that the punishment for count three (possession of an assault rifle) must be stayed under section 654 because he was punished for the enhancement of using an assault weapon in count one.

*People v. Ratcliff* (1990) 223 Cal.App.3d 1401 considered the applicability of section 654 to the crimes of being a felon in possession of a firearm and robbery using the same firearm. (*Id.* at p. 1408.) In *Ratcliff*, the defendant used the firearm in two robberies and was in possession of the firearm when he was arrested half an hour later. (*Id.* at p. 1413.) The appellate court concluded that the defendant's possession of the firearm "was not merely simultaneous with the robberies." (*Ibid.*)

Relying on *Ratcliff*, *People v. Jones* (2002) 103 Cal.App.4th 1139 (*Jones*) concluded that section 654 did not preclude multiple punishments when a felon's possession of a firearm was antecedent to shooting at an inhabited dwelling. (*Jones*, at

5

pp. 1144-1148.) *Jones* stated: " ' "[W]here the evidence shows a possession distinctly antecedent and separate from the primary offense, punishment on both crimes has been approved. On the other hand, where the evidence shows a possession only in conjunction with the primary offense, then punishment for the illegal possession of the firearm has been held to be improper where it is the lesser offense." ' " [Citations.]" (*Jones*, at pp. 1143-1144, fn. omitted.) *Jones* concluded: "The record supports the trial court's implied findings, because the evidence was sufficient to allow the inference that [the defendant's] possession of the firearm was antecedent to and separate from the primary offense of shooting at an inhabited dwelling. It strains reason to assume that [the defendant] did not have possession for some period of time before firing shots at the [victim's] home. Any other interpretation would be patently absurd. [The defendant] committed two separate acts: arming himself with a firearm, and shooting at an inhabited dwelling. [The defendant] necessarily had the firearm in his possession *before* he shot at [the victim's] house, when he and his companion came to the house 15 minutes before the shooting, or, at the very least, when they began driving toward the house the second time. It was therefore a reasonable inference that [the defendant's] possession of the firearm was antecedent to the primary crime. [Citation.]" (*Jones*, at p. 1147.)

Here, defendant threatened the victim with the assault rifle during the robbery. As in *Jones*, "[i]t strains reason to assume that [he] did not have possession for some period of time" before the victim appeared in the backyard. (*Jones*, *supra*, 103 Cal.App.4th at p. 1147.) Moreover, when the police officers searched the vehicle, they found the AK-47 in the backseat where defendant had been sitting, thus supporting a rational inference that defendant was in possession of the weapon after he left the victim's backyard. Thus, there was sufficient evidence to support the trial court's implied finding that defendant had separate objectives in committing the robbery and possessing the assault weapon.

Defendant also contends that the restitution fines must be reduced because punishment for two of the counts must be stayed.

6

The probation report recommended in relevant part: "A Restitution Fine of $7,200 be imposed under the formula permitted by Penal Code section 1202.4 (b)(2). [¶] . . . An additional Restitution Fine of an amount equal to that imposed under Penal Code Section 1202.4 be imposed and suspended pursuant to Section 1202.45 of the Penal Code." At the sentencing hearing, the trial court stated: "Restitution fine of $7,200 will be imposed. Another formula and additional restitution fine of an amount equal to that imposed will be imposed and suspended. . . . All of these fines and fees and statutes are all listed in the probation report."

Former section 1202.4, subdivision (b)(2) provided: "In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." Here, the product of $200 multiplied by defendant's sentence of 12 years, multiplied by defendant's three felony convictions, is $7,200. Thus, the record reflects that the trial court calculated the restitution and parole revocation fines of $7,200 under the formula provided by the version of section 1202.4, subdivision (b)(2) which was in effect when the crimes were committed.

"[T]he section 654 ban on multiple punishments is violated when the trial court considers a felony conviction for which the sentence should have been stayed pursuant to section 654 as part of the court's calculation of the restitution fine under the formula provided by section 1202.4, subdivision (b)(2)." (*People v. Le* (2006) 136 Cal.App.4th 925, 934.) Since we have concluded that the trial court erred by failing to stay sentence on count two, only two of defendant's felony convictions qualified as a multiplier under the formula set forth in former section 1202.4, subdivision (b). The product of $200 multiplied by defendant's sentence of 12 years, multiplied by defendant's two felony convictions, is $4,800. Thus, the restitution fine must be reduced to $4,800. Moreover,

7

the parole revocation restitution fine must be set at the same amount as the restitution fine.  (§ 1202.45; *People v. Vazquez* (2009) 178 Cal.App.4th 347, 355-356.)

## III.    Disposition

The judgment is modified to reflect that the sentence on count two (criminal threats) is stayed pursuant to section 654.  The judgment is also modified to reduce the restitution fine from $7,200 to $4,800 and the parole revocation fine from $7,200 to $4,800.  As modified, the judgment is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Grover, J.